NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3132
_____

UNITED STATES OF AMERICA

v.

NEALE J. MISQUITTA,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-10-cr-00185-001
District Judge: The Honorable Alan N. Bloch

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 13, 2014

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: June 5, 2014)
_____

OPINION
_____

SMITH, *Circuit Judge.*

Neale Misquitta was convicted of five counts of mail fraud under 18 U.S.C. § 1341 following a jury trial in the United States District Court for the Western District of Pennsylvania. Thereafter, the District Court sentenced him to 71 months in prison. Misquitta appeals his conviction and sentence on multiple grounds, none of which have merit. For the reasons that follow, we will affirm.

I.

Misquitta was a corporate officer and 25% shareholder of two companies: Key Environmental, Inc. and Field and Technical Services, Inc. (the "Companies"). For several years, Misquitta charged the Companies for hundreds of thousands of dollars in personal expenses, mostly related to the construction of a new home, which he fraudulently characterized as business expenses. In response to several of these claims, the Companies mailed checks to Misquitta's contractors and to the credit card company that issued Misquitta's corporate card.

Misquitta's business partners discovered his fraudulent scheme in December 2008, at which time they immediately confronted him and ousted him from the Companies. Misquitta never protested that his partners had consented to these charges. Indeed, at one point, he sent them an email apologizing for his "unforgiveable actions" and admitted that there was "no excuse" for his behavior.

Misquitta was subsequently indicted on eight counts of mail fraud in violation of 18 U.S.C. § 1341. At his jury trial, Misquitta's main theory of defense

2

was that his partners consented to his corporate looting because he produced a disproportionate amount of business for the Companies. According to this theory, his partners objected to the arrangement only when the Companies suffered financial strain in 2008, at which point they falsely accused him of fraud in an effort to oust him from the Companies and obtain his shares at a favorable price. To support this theory, Misquitta attempted to introduce evidence of his purportedly disproportionate contribution to the Companies. The District Court allowed admission of this evidence only to a limited extent. Misquitta also attempted to introduce evidence that the market value of his forfeited shares was higher than the book value his partners were obligated to pay him when he was ousted for fraud. The District Court excluded this evidence under Federal Rule of Evidence 403 after concluding that it would confuse the jury and convert the proceedings into a mini-trial on the market value of the Companies.

At the close of trial, Misquitta moved for judgment as a matter of law. He argued that because his partners had consented to the allegedly fraudulent charges, the Government failed to prove his intent to deceive or the materiality of his misrepresentations. Misquitta also argued that, with respect to certain counts, the Government failed to prove the mailing element of 18 U.S.C. § 1341, because one of Misquitta's contractors could not testify with certainty that he had received a

3

check in the mail. The District Court denied Misquitta's motion and a jury convicted him on five counts of mail fraud.

At sentencing, Misquitta argued for a downward departure from the Guidelines range of 70 to 97 months because, as a native of India, he was likely to be deported after serving his sentence. The District Court did not view this as a valid ground for a sentencing reduction. Misquitta also argued that the Guidelines range was inaccurate because the Government had not proven a loss amount of between $1 and $2.5 million by a preponderance of the evidence. The District Court disagreed, finding that the Government proved a loss amount of $1,301,528. The District Court based this finding on a forensic accounting report and testimony from Misquitta's partner at trial. Finally, Misquitta argued that the loss amount should be offset by the value of funds his partners withheld from him after they discovered his fraudulent scheme. The District Court refused to apply this offset, finding that Misquitta had failed to prove that he was entitled to these funds or to even establish an amount he was purportedly owed. Thereafter, the District Court sentenced Misquitta to 71 months in prison. This timely appeal followed.

## II.

The District Court had jurisdiction by virtue of 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing a challenge to a jury verdict based on the sufficiency of the evidence, we "view the evidence in the light

4

most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008) (internal quotation marks and citation omitted). We review a district court's evidentiary rulings for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). We review a district court's decision concerning whether to vary from the Guidelines for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 97–100 (1996). Finally, we review a district court's factual findings regarding the loss amount caused by a defendant's crime under U.S.S.G. § 2B1.1(b) for clear error. *See United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001).

### III.

Misquitta appeals his conviction and sentence on a number of grounds. First, he argues that the evidence on the issues of intent, materiality, and use of the mail was insufficient to sustain his conviction. Additionally, he argues that the District Court erroneously excluded evidence that would have supported his theory of defense. He also argues that the District Court erred by not considering the possibility that he would be deported when fashioning his sentence. Finally, he challenges the District Court's factual finding that the Companies suffered a loss of $1,301,528. None of these arguments has merit.

We reject Misquitta's challenge to the sufficiency of the evidence of intent

and materiality because it is predicated on Misquitta's implausible theory that his partners consented to his charges. A reasonable jury certainly could have rejected Misquitta's theory, particularly considering that his partners confronted him the moment they discovered the true nature of his charges and Misquitta never attempted to justify his behavior.

Misquitta's argument that the alleged mailings were insufficiently connected to his fraudulent scheme fails as well. As a preliminary matter, Misquitta waived this argument by not raising it in the District Court.[1] In any event, the alleged mailings were sufficiently connected to Misquitta's scheme because they were necessary to ensure its long term viability. *See Schmuck v. United States*, 489 U.S. 705, 711–15 (1989); *United States v. Tiller*, 302 F.3d 98, 103 (3d Cir. 2002).

We also reject Misquitta's argument that the District Court erred by excluding evidence related to his theory of defense. Given the implausibility of this theory, and the potential for Misquitta's evidence to both confuse the jury and delay the proceedings, the District Court did not abuse its discretion by excluding this evidence under Rule 403.

Misquitta's challenges to his sentence are similarly unavailing. Misquitta

---

[1] In the District Court, Misquitta argued only that the Government had failed to prove that certain checks were actually sent through the mail. That is, he argued that certain checks were not "mailings" at all. However, he never raised the argument he makes now—that even if these checks were mailed, the mailings were insufficiently connected to his fraudulent scheme.

6

points to no authority that requires a district court to consider the possibility of a defendant's deportation when fashioning his sentence. In fact, multiple circuits have held that a district court is not permitted to consider this factor. *See, e.g., United States v. Guzman*, 236 F.3d 830, 833–34 (7th Cir. 2001); *United States v. Alvarez-Cardenas*, 902 F.2d 734, 737 (9th Cir. 1990). Thus, the District Court did not err in refusing to reduce Misquitta's sentence on these grounds.

We agree with the District Court that the Government proved a loss of between $1 and $2.5 million, as the forensic accounting report and trial testimony provide ample support for this figure. Further, we agree that Misquitta failed to prove that he was entitled to any funds that his partners purportedly withheld. Indeed, he never even identified a specific amount that he was owed. Finally, Misquitta's argument that the loss amount must be limited to the losses charged in the indictment, which he raises for the first time on appeal, is without merit. *See United States v. Sokolow*, 91 F.3d 396, 411 (3d Cir. 1996). The District Court did not err in calculating the loss.

Accordingly, we will affirm the judgment of the District Court.